**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY HAMMOND MURPHY, on behalf of himself and all others similarly situated, <br><br>      Plaintiff, <br><br>    v. <br><br> LE SPORTSAC, INC., <br><br>      Defendant. | Civil Action No. 1:22-cv-00058 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
TO CERTIFY CLASS FOR SETTLEMENT PURPOSES AND
<u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     HISTORY OF THE LITIGATION .............................................................. 1

III.    SUMMARY OF THE AGREEMENT ........................................................ 2

        A.      Key Terms Used In The Agreement ................................................ 2

        B.      Content Covered By The Agreement ............................................... 3

        C.      Remediation Timeline ..................................................................... 3

        D.      Enjoining Settlement Class Members From Asserting Released Claims ............ 5

        E.      Additional Obligations Of The Parties ........................................... 6

                1.      Accessibility Training ........................................................ 6

                2.      Defendant's Reporting Obligations .................................... 7

                3.      Plaintiff's Compliance Monitoring Obligations ................ 8

                4.      Enforcement And Dispute Resolution ................................ 8

        F.      Incentive Award For Plaintiff ........................................................ 8

        G.      Attorneys' Fees And Costs ............................................................. 8

IV.     LEGAL STANDARD .................................................................................. 9

V.      ARGUMENT ............................................................................................... 9

        A.      The Court Should Certify The Class For Settlement Purposes ........... 9

                1.      Plaintiff Satisfies The Requirements Of Rule 23(a) .............. 10

                        (i)     Numerosity ............................................................. 10

                        (ii)    Commonality .......................................................... 11

                        (iii)   Typicality .............................................................. 12

                        (iv)    Adequacy ............................................................... 12

                2.      Plaintiff Satisfies The Requirements Of Rule 23(b)(2) ........ 13

        B.      The Agreement Is Fair, Reasonable, And Adequate, And Should Be
                Preliminarily Approved .................................................................. 14

1.    The Agreement Is Presumptively Fair ..................................................... 15

    (i)     Negotiations Occurred At Arms' Length ..................................... 15

    (ii)    Robust Discovery Was Not Required Because The
         Accessibility Of Defendant's Website Was Obtained
         Independently ............................................................................. 16

    (iii)   Plaintiff And Plaintiff's Counsel Are Experienced In
         Similar Litigation ...................................................................... 16

    (iv)   Given The Terms, Plaintiff Anticipates No Objections .............. 16

2.    The *Girsh* And *Prudential* Factors Favor Preliminary Approval ........... 17

    (i)     Complexity, Expense, And Likely Duration Of Litigation ........ 18

    (ii)    Reaction Of Class To Settlement ................................................ 19

    (iii)   Stage Of Proceedings And Amount Of Discovery
         Completed .................................................................................. 19

    (iv)   Risks Of Establishing Liability And Damages .......................... 19

    (v)    Risks Of Maintaining Class Action Through Trial ................... 20

    (vi)   Ability Of Defendant To Withstand Greater Judgment ............. 20

    (vii)  Range Of Reasonableness Of Settlement In Light Of Best
         Possible Recovery And All Attendant Risks Of Litigation ....... 21

    (viii) *Prudential* Factors ..................................................................... 21

C.    The Proposed Notice And Notice Plan Satisfy The Requirements Of
    Rule 23(e) And Due Process ............................................................................. 22

VI.    CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 15

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) ........................................................ 11

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ................................................ 11, 12, 13, 14

*Cureton v. NCAA*, No. 97-cv-00131,
    1999 U.S. Dist. LEXIS 9706 (E.D. Pa. July 1, 1999) ......................... 10

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ................................................................ 17

*Hassine v. Jeffes*,
    846 F.2d 169 (3d Cir. 1988) ............................................................... 13

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) .......................................................... 18, 22

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liability Litig.*,
    226 F.R.D. 498 (E.D. Pa. 2005) ......................................................... 22

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3d Cir. 2019) ............................................................... 15

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ........................................................ *passim*

*In re NFL Players' Concussion Injury Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ................................................... 9

*In re Pet Food Prods. Liability Litig.*,
    629 F.3d 333 (3d Cir. 2010) ............................................................... 17

*In re Processed Egg Prods. Antitrust Litig.*,
    302 F.R.D. 339 (E.D. Pa. 2014) ......................................................... 22

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ......................................... 15, 18, 21, 22

*In re Prudential Ins. Co. Of Am. Sales Practice Litig.*,
    261 F.3d 355 (3d Cir. 2001) ................................................................. 6

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................. 9

*Kaplan v. Chertoff*, No. 06-cv-05304,
    2008 U.S. Dist. LEXIS 5082 (E.D. Pa. Jan. 24, 2008) ........................ 22

*Kokkonen v. Guardian Life Ins. Co. Of Am.*,
    511 U.S. 375 (1994) ............................................................................. 8

*Kyriazi v. W. Elec. Co.*,
    647 F.2d 388 (3d Cir. 1981) ................................................................. 22

*Metts v. Houstoun*, No. 97-cv-04123,
    1997 U.S. Dist. LEXIS 16737 (E.D. Pa. Oct. 24, 1997) ...................... 13

*Mulder v. PCS Health Sys., Inc.*,
    216 F.R.D. 307 (D.N.J. 2003) ............................................................. 22

*Phila. Elec. Co. v. Anaconda Am. Brass Co.*,
    43 F.R.D. 452 (E.D. Pa. 1968) ........................................................... 10

*Snider v. Upjohn Co.*,
    115 F.R.D. 536 (E.D. Pa. 1987) ......................................................... 10

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ........................................................... 10, 12

*Walsh v. Great Atl. & Pac. Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) ........................................................... 14, 22

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(1) ....................................................................... 10

Fed. R. Civ. P. 23(a)(2) ....................................................................... 11

Fed. R. Civ. P. 23(a)(3) ....................................................................... 12

Fed. R. Civ. P. 23(a)(4) ....................................................................... 12

Fed. R. Civ. P. 23(b)(2) ....................................................................... 14

Fed. R. Civ. P. 23(c)(2) ....................................................................... 22

Fed. R. Civ. P. 23(e) ...................................................................... 9, 14, 22

**<u>Other Authorities</u>**

*Internet/Broadband Fact Sheet*, Pew Research Center (Apr. 7, 2021),
https://www.pewresearch.org/internet/fact-sheet/internet-broadband/ ...................................... 10

James H. Omvig, *Why Use the Word "Blind"?*, Braille Monitor (Jan. 2009),
https://nfb.org/sites/default/files/images/nfb/publications/bm/bm09/bm0901/bm090107.htm ... 1

*Justice Department Secures Agreement with Rite Aid Corporation to Make Its Online
COVID-19 Vaccine Registration Portal Accessible to Individuals with Disabilities*,
DOJ (Nov. 1, 2021), https://www.justice.gov/opa/pr/justice-department-secures-
agreement-rite-aid-corporation-make-its-online-covid-19-vaccine ........................................... 2, 3

Manual for Complex Litigation (Fourth) § 21.61 (2004) .......................................... 9

Matthew W. Brault, *Americans With Disabilities: 2010*, U.S. Census Bureau (July 2012),
https://www2.census.gov/library/publications/2012/demo/p70-131.pdf ................................... 10

Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and
Peapod, LLC, DJ 202-63-169 (Nov. 17, 2014),
https://www.justice.gov/file/163956/download ........................................................ 17

Settlement Between Penn State University and National Federation of the Blind,
U.S. Department of Education, OCR 03-11-2020,
https://accessibility.psu.edu/nfbpsusettlement/ ...................................................... 3, 17

William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022) ............................ 22

Youngstown State University Resolution Agreement, U.S. Department of Education,
OCR 15-13-6002 (Nov. 25, 2014), https://www2.ed.gov/documents/press-releases
/youngstown-state-university-agreement.pdf ............................................................ 17

## I.    INTRODUCTION

Plaintiff Anthony Hammond Murphy submits this Memorandum in Support of his Unopposed Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement. The Agreement[1] resolves this suit against Defendant Le Sportsac, Inc. It is fair and reasonable, and provides substantial benefits to the class, while avoiding the delay, risk, and cost of continued litigation. It is on par with agreements that courts in this district finally approved in *Murphy v. Eyebobs, LLC*, No. 1:21-cv-00017, Doc. 49 (W.D. Pa. Feb. 9, 2022) ("*Eyebobs*"), *Murphy v. Charles Tyrwhitt, Inc.*, No. 1:20-cv-00056, Doc. 47 (W.D. Pa. Feb. 16, 2022) ("*Charles Tyrwhitt*"), and *Murphy v. The Hundreds Is Huge, Inc.*, No. 1:21-cv-00204, Doc. 41 (W.D. Pa. Nov. 17, 2022) ("*The Hundreds*"), and preliminarily approved in *Douglass v. Optavia LLC*, No. 2:22-cv-00594, Doc. 18 (W.D. Pa. Sept. 14, 2022) ("*Optavia*"), and that the District of Massachusetts finally approved in *Giannaros v. Poly-Wood, LLC*, No. 1:21-cv-10351, Doc. 45 (D. Mass. Oct. 27, 2022) ("*Poly-Wood*"). Plaintiff requests that the Court grant his motion.

## II.    HISTORY OF THE LITIGATION

In January 2022, Plaintiff attempted to access Defendant's online store, located at https://www.lesportsac.com/. (Doc. 1, ¶¶ 23-24, 36.) Plaintiff could not access the store because it was not compatible with screen reader auxiliary aids, which Plaintiff uses to access digital content because he is blind.[2] (*Id.*, ¶¶ 19, 35, 40-41.) In February 2022, Plaintiff filed a complaint seeking declaratory and injunctive relief, alleging Defendant does not have, and has never had, adequate policies and practices to cause its store to be accessible to blind persons, in violation of Title III of

---

[1] The proposed Agreement is attached to Plaintiff's motion as Exhibit 1.

[2] Plaintiff uses the word "blind" to describe people who, as a result of a visual impairment, have substantially limited eyesight. This includes people who have no vision at all as well as those who have low vision. *See* James H. Omvig, *Why Use the Word "Blind"?*, Braille Monitor (Jan. 2009), https://nfb.org//sites/default/files/images/nfb/publications/bm/bm09/bm0901/bm090107.htm.

the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and its implementing regulations ("ADA"). (Doc. 1.) In June 2022, the parties jointly notified the Court that they had agreed to settle this case on a class action basis. (Doc. 19.) In September 2022, Plaintiff filed an unopposed motion for leave to file an amended class action complaint ("ACAC"). (Doc. 25.) The Court granted Plaintiff's motion, (Doc. 26), and the Clerk docketed the ACAC, (Doc. 27), on the same day.

The parties now seek to resolve this case on a class basis as set forth in the Agreement.

## III.    SUMMARY OF THE AGREEMENT

Plaintiff brought this action to ensure that blind individuals have equal access to the goods and services that Defendant makes available via its online store. The relief afforded by the Agreement achieves that goal and more. A description of its key provisions follows.

### A.    Key Terms Used In The Agreement

The Agreement defines "Website" as the digital property located at https://www.lesportsac.com/, and "Digital Properties" as including not only the "Website," but also any "New Websites" and any "Subsequently Acquired Websites." (Ex. 1, §§ 2.42, 2.16.)

"Settlement Class" or "Settlement Class Members" means "all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access the Website from the [U.S.]." (Ex. 1, § 2.35.)

The Agreement defines "Accessible" with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1. (Ex. 1, §§ 2.6, 2.41.) The WCAG are based on four general principles—that digital content be perceivable, operable, understandable, and robust. The U.S. Department of Justice ("DOJ") relies on the WCAG to resolve enforcement actions akin to Plaintiff's claims.[3]

---

[3] *See Justice Department Secures Agreement with Rite Aid Corporation to Make Its Online COVID-19 Vaccine Registration Portal Accessible to Individuals with Disabilities*, DOJ (Nov. 1,

So, too, does the National Federation of the Blind ("NFB").[4]

"Agreement Term" means the time from the date of "Final Approval" through 3 years from the date of "Final Approval." (Ex. 1, §§ 2.9, 2.18, 2.19, 3.)

### B.      Content Covered By The Agreement

While the ACAC concerns Plaintiff's inability to access the Website, the Agreement obligates Defendant to make all its Digital Properties Accessible. The breadth of this commitment demonstrates one way in which the Agreement grants more than adequate relief.

The Agreement also extends to "Third-Party Content," or content that is not developed or completely owned by Defendant. (Ex. 1, § 2.40.) The Agreement requires Defendant to request that its vendors of Third-Party Content provide such content in a format that is Accessible, and to notify class counsel in the event such content is not Accessible. (*Id*., §§ 6.1, 6.2.)

### C.      Remediation Timeline

Defendant must ensure the U.S. portions of the Website are Accessible by the end of the Agreement Term. (Ex. 1, § 4.1.) Defendant must meet various other benchmarks during the Agreement Term, which ensures Defendant does not delay its remediation efforts. They include:

| Time from Effective Date | Benchmark | Section(s) of Settlement Agreement |
|---|---|---|
| 3 Months | Designate the Accessibility Coordinator | 7.1 |
| 6 Months | Appoint or retain the Accessibility Consultant | 8.1 |
| 9 Months | Complete the Initial Accessibility Audit of the Website | 9.1 |
| 9 Months | Develop the Accessibility Statement | 11.1 |

---

2021), https://www.justice.gov/opa/pr/justice-department-secures-agreement-rite-aid-corporation-make-its-online-covid-19-vaccine.

[4] *See* Settlement Between Penn State University and National Federation of the Blind, U.S. Department of Education, Office for Civil Rights, Docket No. 03-11-2020, §§ III-V, https://accessibility.psu.edu/nfbpsusettlement/ (last accessed Sept. 22, 2022).

| 12 Months | Post the Accessibility Statement on the Website | 11.4 |
|---|---|---|
| 18 Months | Add a link at the beginning of the Website directing screen reader users to the Accessibility Statement | 11.5 |
| 18 Months | Develop and implement the Accessibility Strategy | 10.1 |
| 18 Months | Disseminate the Accessibility Strategy | 10.4 |
| 18 Months | Provide Accessibility training to Defendant's employees who are directly responsible for website content, design, development, or maintenance, if any | 12.1 |
| 18 Months | Request that any third-party who is directly responsible for website content, design, development, or maintenance provide Accessibility training to its employees | 12.2 |
| 18 Months | Make reasonable efforts to modify existing bug fix policies, practices, and procedures to include the elimination of bugs that create Accessibility barriers | 15.1 |

The Agreement includes other obligations to which Defendant must adhere immediately:

| Time from Effective Date | Benchmark | Section(s) of Settlement Agreement |
|---|---|---|
| Immediately | Ensure the U.S. portions of any New Websites are Accessible upon their release | 4.2 |
| Immediately | Ensure the U.S. portions of any Subsequently Acquired Websites are Accessible within 18 months of their acquisition | 4.3 |
| Immediately | Request that vendors provide Third-Party Content that is Accessible | 6.1 |
| Immediately | Provide Accessibility training to Defendant's newly-hired employees responsible for website content, design, development, or maintenance, if any, within 180 days of their hire date | 12.3 |
| Immediately | Train Defendant's customer service personnel, if any, to assist screen reader users | 13.1 |
| Immediately | Request that third-party customer service personnel, if any, are trained to assist screen reader users | 13.2 |
| Immediately | Perform Semi-Annual Automated Accessibility Audits to evaluate whether the Digital Properties are Accessible | 16.1 |
| Immediately | Perform Annual End-User Accessibility Testing to evaluate whether the Digital Properties are Accessible | 17.1 |

| 2023 | Provide annual refresher Accessibility training to Defendant's employees responsible for website content, design, development, or maintenance, if any | 12.4 |

### D. Enjoining Settlement Class Members From Asserting Released Claims

The Agreement obliges Plaintiff to request that the Court enjoin Settlement Class Members from bringing any "Released Injunctive Claims." (Ex. 1, § 28.1.) This term is defined as:

> any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief, based on the Accessibility of any Websites to persons who are limited in the life activity of seeing and who use screen reader auxiliary aids to access digital information, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporate the ADA or (b) set forth standards or obligations coterminous with or equivalent to the ADA.

(*Id*., § 2.33.) The Released Injunctive Claims "cover all conduct concerning the Accessibility of any Websites through the Agreement Term." (*Id*.)

This request is consistent with the agreements approved in *Eyebobs* (Doc. 49 at Ex. A, §§ 2.35, 28.1), *Charles Tyrwhitt* (Doc. 47-1 at §§ 2.32, 26.1), *The Hundreds* (Doc. 41 at Ex. A, §§ 2.35, 29.1), *Optavia* (Doc. 12-1 at §§ 2.38, 28.1), and *Poly-Wood* (Doc. 45 at Ex. A, §§ 2.32, 25.1).

It also mirrors a 2006 settlement agreement that resolved nationwide ADA class claims—and that was judicially approved—in *Lucas v. Kmart Corporation*, No. 1:99-cv-01923 (D. Col.). In *Lucas*, plaintiffs who used wheelchairs or scooters for mobility alleged that they were denied full and equal enjoyment of Kmart's goods and services because Kmart failed to maintain unobstructed aisles, parking spaces, restrooms, fitting rooms, checkout lanes, and more. After seven years of litigation, the court approved a settlement agreement resolving the plaintiffs' claims. *See Lucas*, No. 1:99-cv-01923, Doc. 235 (D. Col. July 27, 2006). The settlement agreement allowed Kmart up to seven-and-a-half years to remediate its stores nationwide, during which time

the court was to retain jurisdiction. *Id.* at 26. The court enjoined a nationwide ADA class from asserting or pursuing released claims during the remediation period. The court explained:

> it is particularly appropriate to issue an injunction in this case because the settlement has a term of approximately seven and a half years during which the Court will continue to retain jurisdiction . . . . Therefore, because the Court finds that it would aid in the protection of its jurisdiction and is necessary in order to effectuate this settlement, the Court hereby permanently enjoins members of the Nationwide Class . . . from asserting or pursuing . . . [c]laims seeking injunctive relief relating in any way to the accessibility of Kmart stores to persons who use wheelchairs or scooters under Title III of the Americans with Disabilities Act[.]

*Id.* at 26-27.

Like *Lucas*, *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, and *Poly-Wood*, the Court should enjoin the pursuit of released claims upon final approval since doing so is "necessary or appropriate in aid of [its] jurisdiction[]" and "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *In re Prudential Ins. Co. Of Am. Sales Practice Litig.*, 261 F.3d 355, 365-66 (3d Cir. 2001) (quotations and citations omitted).

### E.   Additional Obligations Of The Parties

#### 1.   Accessibility Training

To the extent any of Defendant's employees are responsible for website content, design, development, or maintenance, Defendant will train such employees to ensure the future design, development, and maintenance of the Digital Properties are and remain Accessible. (Ex. 1, § 12.1.) To the extent a third-party is responsible for website content, design, development, or maintenance, Defendant will request that the third-party train its employees to ensure the future design, development, and maintenance of the Digital Properties are and remain Accessible. (*Id.*, § 12.2.)

2.      **Defendant's Reporting Obligations**

To help ensure compliance with the Agreement, the Agreement requires periodic reporting by Defendant to class counsel. Below is a summary of these reporting obligations.

| Information | Deadline | Section(s) of Settlement Agreement |
|---|---|---|
| Designation of Settlement Contact | Within 10 days of Effective Date | 2.30 |
| Changes to Settlement Contact | Within 10 days of any change | 2.30 |
| Third-Party Content Defendant cannot confirm is Accessible | To be included in Annual Report | 6.2 |
| Confirmation of Defendant's designation of Accessibility Coordinator | Within 3 months of Effective Date | 7.1 |
| Accessibility Consultant's Letter of Accessibility and Status Report | To be included as exhibits to Annual Report | 8.4 |
| Changes to Accessibility Consultant | Within 3 months of any change | 8.5 |
| Results of Initial Accessibility Audit | To be included as exhibit to Annual Report | 9.3 |
| Accessibility Strategy | Within 18 months of Effective Date | 10.3 |
| Accessibility Statement | Within 9 months of Effective Date | 11.3 |
| Status of Accessibility Statement | To be included in Annual Report | 11.8 |
| Accessibility training materials | To be included in Annual Report | 12.5 |
| Complaints received by Defendant or customer service personnel regarding Accessibility of Digital Properties | As soon as possible | 13.3, 14.2 |
| Results of Semi-Annual Automated Accessibility Audits | To be included in Annual Report | 16.2 |
| Results of Annual End-User Accessibility Testing | To be included in Annual Report | 17.2 |

| Accessibility-related questions, comments, and complaints received by Defendant | To be included in Annual Report | 19.2 |
|---|---|---|
| Annual Report | On anniversary of Effective Date during Agreement Term | 23.1 |

### 3.    Plaintiff's Compliance Monitoring Obligations

Plaintiff is entitled to visit the Digital Properties at any time, without notice to Defendant, for the purpose of evaluating Defendant's compliance with the Agreement. (Ex. 1, § 19.1.)

### 4.    Enforcement And Dispute Resolution

While the parties will move to dismiss this action with prejudice under Fed. R. Civ. P. 41, they request that the Court's dismissal order expressly retain the Court's jurisdiction to enforce the Agreement pursuant to *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375 (1994). (Ex. 1, §§ 28.2, 37.) The parties must attempt to resolve disputes relating to the terms of the Agreement through meet-and-confer negotiations and, if unsuccessful, mediation before submitting any dispute to the Court. (*Id.*, § 24.)

### F.    Incentive Award For Plaintiff

If approved by the Court, Defendant will pay an incentive award of $1,000.00 to Plaintiff. (Ex. 1, § 22.1.) Plaintiff has waived any right to an incentive award in connection with this matter that exceeds $1,000.00. (*Id.*, § 22.2.) *See Flynn v. Concord Hosp. Enters. Co.*, No. 2:17-cv-01618, Doc. 42, ¶ 10 (W.D. Pa. Nov. 27, 2018) (approving $1,500.00 incentive award to plaintiff as part of class action settlement resolving nationwide ADA claims).

### G.    Attorneys' Fees And Costs

If approved by the Court, Defendant will pay Plaintiff's attorneys' fees and costs incurred in connection with this matter in the amount of $45,000.00. (Ex. 1, § 25.) A forthcoming fee petition will provide an overview of Plaintiff's fees expended and costs incurred in this litigation.

## IV.    LEGAL STANDARD

"The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval," which can be granted "only on finding that [the proposed settlement] is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e). "[P]reliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014). "Judicial review must be exacting and thorough . . . because the adversariness of litigation is often lost after the agreement to settle." *Id.* at 714-15 (quoting Manual for Complex Litigation (Fourth) § 21.61 (2004)). "In cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, . . . courts [must] be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *Id.* at 715 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004)).

## V.    ARGUMENT

To approve a class settlement, a court must find that: (A) the class should be certified for settlement purposes; (B) the settlement is fair, reasonable, and adequate; and (C) the notice and notice plan meet due process requirements. For the reasons stated below, all of these requirements are met. Thus, Plaintiff's request for class certification and preliminary approval should be granted.

### A.    The Court Should Certify The Class For Settlement Purposes

Plaintiff seeks certification of the following Settlement Class:

[A]ll Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States.

(Ex. 1, § 2.35.) The Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(2).

1.      **Plaintiff Satisfies The Requirements Of Rule 23(a)**

(i)      **Numerosity**

The Court must find "the class is so numerous that joinder of all members is impracticable."

Fed. R. Civ. P. 23(a)(1). Impracticability does not mean impossibility; it means class certification

is proper in light of the difficulty of joining all members of the putative class. *Cureton v. NCAA*,

No. 97-cv-00131, 1999 U.S. Dist. LEXIS 9706, at *15 (E.D. Pa. July 1, 1999). The inquiry is

focused on judicial economy. *See Phila. Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463

(E.D. Pa. 1968) ("I see no necessity for encumbering the judicial process with 25 lawsuits, if one

will do."). While there is no precise standard, a class of more than 40 individuals typically satisfies

the requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). General knowledge

and "common sense assumptions" may be applied to the numerosity determination. *See Snider v.*

*Upjohn Co*., 115 F.R.D. 536, 539 (E.D. Pa. 1987).

The numerosity requirement is satisfied here, based on common sense and available data

regarding the number of individuals in the U.S. who are visually disabled and who use the internet.

First, U.S. Census Bureau data from 2010 shows that, of the 241.7 million individuals aged 15 and

older, "[a]bout 8.1 million people . . . had difficulty seeing, including 2.0 million people who were

blind or unable to see." Matthew W. Brault, *Americans With Disabilities: 2010*, U.S. Census

Bureau (July 2012), https://www2.census.gov/library/publications/2012/demo/p70-131.pdf.

Second, about 93% of U.S. adults use the internet. *Internet/Broadband Fact Sheet*, Pew Research

Center (Apr. 7, 2021), https://www.pewresearch.org/internet/fact-sheet/internet-broadband/.

Taken together, about 7.5 million U.S. adults who have difficulty seeing, including about 1.8

million U.S. adults who are blind, use the internet. Because Defendant's Website is publicly

available in the U.S., at any given time, any number of the 7.5 million members of the public who

have difficulty seeing and use the internet may seek to access Defendant's Website. In light of the

number of visually disabled internet users who may seek to access Defendant's Website, the numerosity requirement is met. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (extrapolating from evidence of existence of over 175,000 wheelchair users and 700,000 semi-ambulatory persons in California that thousands of disabled individuals were affected by access violations at defendant's 70 theatres).

Courts found that identical classes satisfied numerosity in *Eyebobs* (Doc. 36 at p. 4), *Charles Tyrwhitt* (Doc. 30 at p. 4), *The Hundreds* (Doc. 24 at pp. 4-5), *Optavia* (Doc. 17 at p. 7), and *Poly-Wood* (Doc. 45 at p. 2). This Court should too.

### (ii)    Commonality

The Court must find "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In cases seeking injunctive relief, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. . . . Because the requirement may be satisfied by a single common issue, it is easily met[.]" *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Further, "because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *Id.* at 57.

The commonality requirement is satisfied here. There are numerous factual and legal issues common to Plaintiff and the Settlement Class Members, like: whether they have been, are being, or will be denied full and equal access to, and use and enjoyment of, Defendant's Website due to Defendant's alleged failure to make it fully and equally accessible to and useable by individuals who use screen reader auxiliary aids to access digital content; and what actions are required by law to ensure Defendant's Website is accessible to them. The commonality requirement is met. *See Baby Neal*, 43 F.3d at 60-62 (finding common factual and legal issues under relevant standard).

Courts found that identical classes satisfied commonality in *Eyebobs* (Doc. 36 at pp. 4-5),

*Charles Tyrwhitt* (Doc. 30 at pp. 4-5), *The Hundreds* (Doc. 24 at pp. 5-6), *Optavia* (Doc. 17 at p. 7), and *Poly-Wood* (Doc. 45 at p. 2). This Court should too.

### (iii)    Typicality

The Court must find the named plaintiff's claims are typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). "Typicality entails an inquiry [into] whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Baby Neal*, 43 F.3d at 57-58. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. . . . Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." *Id*. at 58.

The typicality requirement is satisfied here. Plaintiff's and the Settlement Class Members' claims are typical since both sets of claims arise from the same practices and are based on the same legal theory: that Defendant failed to make its online store accessible to individuals who have a visual disability. *Id*.; *see also Stewart*, 275 F.3d at 227-28. Because the claims in this case are "framed as a violative practice" and seek to remedy injuries linked to this practice, they "occupy the same position of centrality for all class members." *Baby Neal*, 43 F.3d at 63. The typicality requirement is met.

Courts found that identical classes satisfied typicality in *Eyebobs* (Doc. 36 at pp. 5-6), *Charles Tyrwhitt* (Doc. 30 at p. 5), *The Hundreds* (Doc. 24 at p. 6), *Optavia* (Doc. 17 at p. 7), and *Poly-Wood* (Doc. 45 at p. 2). This Court should too.

### (iv)    Adequacy

The Court must find "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met where the named plaintiff's

interests are not antagonistic to the class members' interests, and counsel for the named plaintiff is experienced and qualified to conduct the litigation. *Baby Neal*, 43 F.3d at 55.

First, Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no adverse or antagonistic interests to the class. Plaintiff and the Settlement Class Members share the same injuries and seek the same relief—access to Defendant's online store. *Metts v. Houstoun*, No. 97-cv-04123, 1997 U.S. Dist. LEXIS 16737, at *11 (E.D. Pa. Oct. 24, 1997) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)) ("Because the plaintiffs seek the same injunctive relief as all members of the class, the court 'can find no potential for conflict between the claims of the complainants and those of the class as a whole.'").

Second, Plaintiff retained experienced and competent counsel who fairly and adequately protected the interests of the class throughout the litigation and the negotiation of the Agreement. Counsel have experience litigating class actions, generally, and prosecuting Title III ADA claims, specifically.[5] To this end, courts have found attorneys Tucker, Abramowicz, Fisher, Steiger, and Moore adequately represented similar classes in *Eyebobs* (Doc. 49 at p. 3 (Tucker, Abramowicz, and Fisher)), *Charles Tyrwhitt* (Doc. 47 at p. 3 (Tucker, Abramowicz, and Fisher)), *The Hundreds* (Doc. 24 at pp. 6-8 (Tucker, Abramowicz, Fisher, Steiger, and Moore)), *Optavia* (Doc. 18 at p. 2 (Tucker and Abramowicz)), and *Poly-Wood* (Doc. 45 at p. 2 (Tucker and Abramowicz)).

Accordingly, the adequacy requirement is satisfied here. Plaintiff will protect the interests of the class, and Plaintiff's counsel are experienced litigators who are well-versed in class litigation and the law of disability discrimination.

### 2.    Plaintiff Satisfies The Requirements Of Rule 23(b)(2)

Plaintiff asserts claims for injunctive relief under Rule 23(b)(2). A class may be certified

---

[5] Plaintiff's counsel's resumes are attached to Plaintiff's motion as Exhibit 3.

under Rule 23(b)(2) if the prerequisites of Rule 23(a) are met and "the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R.

Civ. P. 23(b)(2). Because the relief sought in a Rule 23(b)(2) class action is "cohesive in nature,"

a named plaintiff "can, as a matter of due process, bind all absent class members by a judgment."

*Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983). Rule 23(b)(2) class actions

"frequently [serve] as the vehicle for civil rights actions and other institutional reform cases[.]"

*Baby Neal*, 43 F.3d at 58-59. Such is the case here.

Certification under Rule 23(b)(2) is appropriate here. This case concerns a single, common

contention: that Defendant failed to provide equal, effective, and full access to its online store to

blind people who use screen reader software to access digital content. By failing to develop and

maintain an online store compatible with screen reader software, Defendant acted or refused to act

on grounds generally applicable to the Settlement Class. The injunctive relief that Plaintiff seeks—

Defendant's agreement to modify its policies and practices going forward—is sought to benefit,

and indeed will benefit, the Settlement Class as a whole. Moreover, courts have found certification

of similar classes to be appropriate under Rule 23(b)(2) in *Eyebobs* (Doc. 36 at pp. 7-9), *Charles

Tyrwhitt* (Doc. 30 at pp. 7-8), *The Hundreds* (Doc. 24 at pp. 8-10), *Optavia* (Doc. 17 at p. 8), and

*Poly-Wood* (Doc. 45 at p. 2). Class certification under Rule 23(b)(2) is proper.

### B.   The Agreement Is Fair, Reasonable, And Adequate, And Should Be Preliminarily Approved

A class action can be settled only with court approval based on a finding that the settlement

is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e). The fairness inquiry "protects unnamed

class members from unjust or unfair settlements affecting their rights when the representatives

become fainthearted before the action is adjudicated or are able to secure satisfaction of their

individual claims by a compromise." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *see also id.* ("[District courts bear] the important responsibility of protecting absent class members, 'which is executed by . . . assuring that the settlement represents adequate compensation for the release of the class claims.'"). "In cases of settlement classes, where district courts are certifying a class and approving a settlement in tandem, they should be 'even more scrupulous than usual when examining the fairness of the proposed settlement.'" *Id.* Still, "whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) ("*Prudential*").

### 1.      The Agreement Is Presumptively Fair

District courts in the Third Circuit "apply an initial presumption of fairness in reviewing a class settlement when: '(1) the negotiations occurred at arms [*sic*] length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 436.

### (i)      Negotiations Occurred At Arms' Length

The parties devoted months to proactively resolving Plaintiff's claims. Plaintiff's counsel drew upon their experience resolving similar claims to achieve a resolution that is comparable to the obligations contained in every publicly available settlement resolving digital accessibility claims of which Plaintiff's counsel are aware, including the class settlements approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, and *Poly-Wood*. Moreover, negotiation of the material terms of the Agreement was conducted without regard to the payment of Plaintiff's attorneys' fees and costs. In other words, Plaintiff did not bargain away the right to pursue injunctive relief to receive greater fees—as demonstrated by the comprehensive obligations the Agreement contains. The Court should not "intrude overly on the parties' hard-fought bargain." *In re Google Inc.*

*Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 326 (3d Cir. 2019).

> **(ii)    Robust Discovery Was Not Required Because The Accessibility Of Defendant's Website Was Obtained Independently**

Plaintiff and his legal team conducted multiple rounds of end-user reviews to determine whether the Website is fully and equally accessible to blind consumers. From these reviews, Plaintiff determined the Website is not accessible to him and the class. Plaintiff does not require additional discovery to determine whether the Website is accessible—it's not—or whether Defendant's current policies and practices are sufficient—they're not. Importantly, while burdensome discovery would have generated greater fees for Plaintiff's counsel, it would not have secured any better relief. And, as described herein, the injunctive relief Plaintiff obtained on behalf of himself and the class exceeds or is comparable to the relief contained in every publicly available settlement resolving digital accessibility claims of which Plaintiff's counsel are aware, including the settlements approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, and *Poly-Wood*.

> **(iii)    Plaintiff And Plaintiff's Counsel Are Experienced In Similar Litigation**

As explained above, Plaintiff retained experienced and competent counsel who fairly and adequately protected the interests of the Settlement Class throughout the litigation of the case and during the negotiation of the Agreement. Plaintiff's counsel have many years of experience prosecuting class and civil rights litigation, generally, and digital accessibility claims, in particular. There is ample evidence that Plaintiff's counsel are sufficiently experienced in similar litigation.

> **(iv)    Given The Terms, Plaintiff Anticipates No Objections**

Plaintiff does not anticipate objections from Settlement Class Members, given the terms of the Agreement. The relief included in the Agreement exceeds or is comparable to the relief achieved in every publicly available settlement resolving digital accessibility claims of which

Plaintiff's counsel are aware, including the settlements approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, and *Poly-Wood*. *See Eyebobs*, Doc. 49 at Ex. A; *Charles Tyrwhitt*, Doc. 47-1; *The Hundreds*, Doc. 41 at Ex. A; *Optavia*, Doc. 12-1; *Poly-Wood*, Doc. 45 at Ex. A; *see also* Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and Peapod, LLC, DJ 202-63-169, §§ 12-13, 16-18, 20, Exs. A-B (Nov. 17, 2014), https://www.justice.gov/file/163956/download; Settlement Between Penn State University and National Federation of the Blind, U.S. Department of Education, OCR 03-11-2020, §§ III-V, https://accessibility.psu.edu/nfbpsusettlement/ (last accessed Oct. 17, 2022); Youngstown State University Resolution Agreement, U.S. Department of Education, OCR 15-13-6002 (Nov. 25, 2014), https://www2.ed.gov/documents/press-releases/youngstown-state-university-agreement .pdf. This is unsurprising, as the parties looked to these agreements as their model for the resolution of this case. As a result, Plaintiff does not anticipate any objectors to the Agreement.

### 2.    The *Girsh* And *Prudential* Factors Favor Preliminary Approval

In *Girsh v. Jepson*, the Third Circuit supplied nine factors to be considered when assessing the fairness of a proposed class settlement:

> (1) the complexity, expense and likely duration of the litigation[;] (2) the reaction of the class to the settlement[;] (3) the stage of the proceedings and the amount of discovery completed[;] (4) the risks of establishing liability[;] (5) the risks of establishing damages[;] (6) the risks of maintaining the class action through the trial[;] (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery[;] [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 156-57 (3d Cir. 1975). The settling parties must prove that "the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). "A district court's findings under the *Girsh* test are those of fact. Unless clearly erroneous, they are upheld." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 437.

Later, in *Prudential*, the Third Circuit held that, because of "a sea-change in the nature of class actions," it might be useful to expand the *Girsh* factors to include:

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d at 323. "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013).

### (i) Complexity, Expense, And Likely Duration Of Litigation

"The first [*Girsh*] factor captures the probable costs, in both time and money, of continued litigation." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 437. A roadmap exists for what continued litigation could look like. A Rule 26(f) Report filed in another digital accessibility case identified the defendant's intention to conduct discovery into the plaintiff's disability, his interest in and motivation for accessing the defendant's online store, his prior attempts to access the same, and his intention to return to the same in the future, as well as the plaintiff's intention to conduct discovery into the defendant's policies and practices, generally. *Murphy v. Mast Gen. Store, Inc.*, No. 1:20-cv-00079, Doc. 14 (W.D. Pa. June 22, 2020). The parties anticipated written discovery, depositions, expert reports, and cross-motions for summary judgment. *Id.* None of this would yield a better result than the result reached in the Agreement. There is no additional relief Plaintiff could

obtain that justifies the added complexity, expense, and duration of continued litigation.

### (ii)    Reaction Of Class To Settlement

"The second *Girsh* factor attempts to gauge whether members of the class support the settlement." *In re NFL Players Concussion Injury Litig*., 821 F.3d at 438. As already explained, *see* Section (V)(B)(1)(iv) *supra*, the injunctive relief obtained in the Agreement exceeds or is comparable to the obligations contained in every publicly available settlement resolving digital accessibility claims of which Plaintiff's counsel are aware, including settlements achieved by the DOJ and NFB and those approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, and *Poly-Wood*. It is unlikely the Agreement will draw criticism from industry advocates or the class.

### (iii)    Stage Of Proceedings And Amount Of Discovery Completed

"The third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re NFL Players Concussion Injury Litig*., 821 F.3d at 438-39. Plaintiff's counsel have prosecuted similar digital accessibility claims since 2016. Plaintiff has filed such claims since 2020. Plaintiff and his legal team visited Defendant's online store and developed firsthand knowledge of the access barriers that exist. From that knowledge, and their experience prosecuting similar claims, Plaintiff and his counsel adequately appreciated the merits of their case and the available relief. Because the Agreement achieves the very relief Plaintiff would request in summary judgment or trial, the Court should not draw a negative inference from the parties' resolution at an early stage without formal discovery.

### (iv)    Risks Of Establishing Liability And Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the

benefits of an immediate settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 439. These factors favor settlement because Plaintiff cannot reasonably anticipate achieving more complete injunctive relief at trial than the parties have agreed to in the Agreement. In addition, Defendant might successfully raise various affirmative defenses in dispositive motions or at trial, including that it has no obligations under the ADA to make its online store accessible to blind shoppers or that any further modifications to its online store would impose an undue burden or fundamentally alter its business. Given the Agreement's relief and Defendant's potential defenses, these factors weigh in favor of settlement.

### (v) Risks Of Maintaining Class Action Through Trial

The sixth *Girsh* factor is essentially "toothless" in a settlement class since "a district court need not inquire whether the case, if tried, would present intractable management problems[,] . . . for the proposal is that there be no trial." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. In any event, this factor weighs in favor of settlement still because Plaintiff has no adverse interests to those of the class, and is unlikely to develop any such interests, like regaining his sight such that he no longer requires Defendant's online store to be compatible with screen readers.

### (vi) Ability Of Defendant To Withstand Greater Judgment

"The seventh *Girsh* factor is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. This factor is less relevant here, as Plaintiff seeks only injunctive relief. Either way, the Agreement cuts no corners in outlining Defendant's future accessibility policies and practices. It obligates Defendant to: ensure that the U.S. portions of all the Digital Properties are Accessible; designate an internal Accessibility Coordinator; retain an external Accessibility Consultant; provide accessibility training, if applicable, or request the same; conduct automated and end-user accessibility testing; and more. No greater judgment is necessary (or reasonably available).

> **(vii)** **Range Of Reasonableness Of Settlement In Light Of Best Possible Recovery And All Attendant Risks Of Litigation**

"In evaluating the eighth and ninth *Girsh* factors, [courts] ask whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. "The[se] factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* Here, the Agreement represents good value for any case. If Plaintiff were successful at summary judgment or trial, he would be entitled only to the injunctive relief the Court deemed appropriate. In making a request for such relief, Plaintiff would direct the Court to the settlements achieved by the DOJ and NFB in closely analogous cases and to the settlements approved in this district in similar cases, *see* Section (V)(B)(1)(iv) *supra*, which the Agreement tracks. Once again, because the Agreement exceeds or is comparable to the "best possible recovery" achieved by the DOJ, the NFB, and in other cases prosecuted by Plaintiff's counsel, the eighth and ninth *Girsh* factors weigh in favor of preliminary approval.

> **(viii)** *Prudential* **Factors**

While many of the *Prudential* factors are irrelevant to actions seeking injunctive relief, those that are relevant here weigh in favor of approval. The third *Prudential* factor compares the "results achieved by the settlement for individual class . . . members and the results achieved—or likely to be achieved—for other claimants[.]" *Prudential*, 148 F.3d at 323. As explained earlier, no other claimant is likely to achieve any better injunctive relief than the Agreement provides. The fifth *Prudential* factor considers "whether any provisions for attorneys' fees are reasonable[.]" *Id.* Defendant has agreed to pay Plaintiff's attorneys' fees and costs in the amount of $45,000.00. (Ex. 1, § 25.) A forthcoming fee petition will offer an overview of Plaintiff's fees and costs. Since the petition remains subject to the Court's approval, this factor does not weigh against settlement.

C.      **The Proposed Notice And Notice Plan Satisfy The Requirements Of Rule 23(e) And Due Process**

"The court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e). Unlike those under Rule 23(b)(3), class actions certified under Rule 23(b)(2) contain "no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements." William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022); Fed. R. Civ. P. 23(c)(2). In cases certified under Rule 23(b)(2), "the stringent requirement of Rule 23(c)(2) that members of the class receive the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts,' is inapplicable." *Kaplan v. Chertoff*, No. 06-cv-05304, 2008 U.S. Dist. LEXIS 5082, at *38-39 (E.D. Pa. Jan. 24, 2008) (quoting *Walsh*, 726 F.2d at 962). "Rule 23(e) makes some form of post-settlement notice mandatory, although the form of notice is discretionary because Rule[23](b)(2) classes are cohesive in nature." *Id.* at *39 (alterations omitted) (quoting *Walsh*, 726 F.2d at 962-63); *see also Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 393 (3d Cir. 1981) (same); *Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307, 318 (D.N.J. 2003) (same).

Courts in the Third Circuit have found notice to be adequate where it is "well-calculated to reach representative class members," and describes the litigation, defines the class, explains the settlement's general terms, provides information on the fairness hearing, describes how class members can file objections, states where complete information can be located, and provides contact information. *Kaplan*, 2008 U.S. Dist. LEXIS 5082, at *36-37, 41 (citing *Prudential*, 148 F.3d at 327 n.86); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180; *In re Processed Egg Prods. Antitrust Litig.*, 302 F.R.D. 339, 354 (E.D. Pa. 2014); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liability Litig.*, 226 F.R.D. 498, 517-18 (E.D. Pa. 2005).

Here, the parties have agreed on a form of notice and methods to disseminate the notice that are specifically targeted to members of the visually disabled community and satisfy Rule 23.

The proposed Long-Form Notice describes the litigation, defines the Settlement Class, explains the Agreement's terms, provides information on the fairness hearing, describes the process and time for filing objections, states where complete information is located, and provides contact information so Settlement Class Members can contact class counsel with questions.[6]

The Agreement provides for notice to be distributed, in pertinent part, as follows:[7]

27.1.  As soon as practicable, but no later than thirty (30) days after the Court's entry of a Preliminary Approval order, Le Sportsac shall, at its expense:

    27.1.1. Add dates to the placeholders in the Long-Form Notice . . . .

    27.1.2. Ensure the Settlement Website is live and may be accessed over the internet. Le Sportsac and Class Counsel shall ensure that the documents published on the Settlement Website are fully and equally accessible to Class Members via the Settlement Website, or otherwise. Le Sportsac shall further ensure that the Settlement Website tracks the number of visitors to the Website; and that the Settlement Website remains published for at least 180 days after the date the Court grants final approval of the Settlement Agreement.

    27.1.3. Cause the Long-Form Notice to be published on, and make the following documents filed in the Lawsuit available for download on, the Settlement Website: the class action complaint, motion for preliminary approval of class action settlement and all supporting documents, and the Court's orders concerning preliminary approval as well as any supporting memorandum. Le Sportsac and Class Counsel shall ensure the documents identified in this Section shall be fully accessible by individuals who use screen reader auxiliary aids.

    27.1.4. Add an invisible link at the beginning of the Website to direct

---

[6] The proposed Long-Form Notice is attached to the proposed Agreement as Exhibit 1.

[7] The proposed notice plan is attached to Plaintiff's motion as Exhibit 2.

consumers using screen readers to the Settlement Website. The link shall include alternative text which reads "Click to view our ADA class action settlement notice." Le Sportsac will ensure this link remains published for at least 180 days after the date the Court grants final approval of the Settlement Agreement.

27.1.5. Publish posts concerning the Settlement Website on each of Le Sportsac's social media accounts, including, where applicable, https://www.facebook.com/lesportsac, https://www.instagram.com/lesportsac, and https://twitter.com/lesportsac. The post shall be in the form of Section 27.5 (it is agreed and understood that the exact language is subject to change) and shall include alternative text to ensure the post is fully accessible by individuals who use screen reader auxiliary aids. Le Sportsac will maintain the posts on its social media accounts during the Agreement Term.

27.1.6. Publish a blog post on the Website in the form set forth in Section 27.6 (it is agreed and understood that the exact language is subject to change). Le Sportsac shall ensure the post is fully accessible by individuals who use screen reader auxiliary aids. Le Sportsac will maintain the blog post on its Website during the Agreement Term.

27.2. As soon as practicable, but no later than seven (7) days after they are filed, Le Sportsac shall make any motion for attorneys' fees and costs, and supporting documentation, as well as any order granting or denying any motion for attorneys' fees and costs, available for download on the Settlement Website. Le Sportsac shall ensure the documents identified in this Section shall be fully accessible by individuals who use screen reader auxiliary aids.

27.3. No less than five (5) days before the fairness hearing, Le Sportsac shall provide Class Counsel a declaration that all of the obligations of Paragraph 27.1 and 27.2, have been discharged, along with the number of visitors to the Settlement Website.

27.4. As soon as practicable, but no later than thirty-five (35) days after the Court's entry of a Preliminary Approval order, Class Counsel shall, at its expense, request that at least the following organizations publish notice in the form of Section 27.7 (it is agreed and understood that the exact language is subject to change) in their respective electronic newsletters and social media accounts such that the notice is sent out within sixty (60) days of

> Preliminary Approval: ACHIEVA, American Action Fund for Blind Children and Adults, American Council of the Blind, American Foundation for the Blind, Blinded American Veterans Foundation, Blinded Veterans Association, Foundation Fighting Blindness, Civil Rights Education and Enforcement Center, Disability Law Center, Disability Rights Education and Defense Fund, and National Federation of the Blind.

This method for providing notice is similar to that approved in *Nat'l Fed'n Of The Blind v. Uber Techs., Inc.*, No. 14-cv-04086, Doc. 112 (N.D. Cal. July 13, 2016). There, the parties agreed:

> As soon as practicable, but no later than three (3) weeks / twenty-one (21) days after the Court's entry of a Preliminary Approval Order, Uber will pay the cost of publishing a stipulated class action settlement notice on a search-engine-optimized ("SEO") settlement website operated by a stipulated class action settlement administrator. Uber will pay the cost of the settlement administrator. After the settlement website is posted online, Uber will post a link to the settlement notice on its news blog (newsroom.uber.com) and https://www.facebook.com/uber within 30 days of the Preliminary Approval Order. Uber will further pay the cost, if any, of ensuring the notice is published in the electronic newsletters and Braille magazines of the National Federation of the Blind and the American Council of the Blind so notice is sent out within 60 days of the Preliminary Approval Order.

Proposed Agreement, *Uber Techs., Inc.*, No. 14-cv-04086, Doc. 85-1 (N.D. Cal. Apr. 29, 2016).

Here, in addition to the channels the court approved in the *Uber* case, Plaintiff has agreed to contact nine additional organizations to request that the organizations notify their members, which also ensures the organizations have an opportunity to object to the Agreement on behalf of their memberships, if appropriate. The Court should approve the notice and notice plan.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the class for settlement purposes and preliminarily approve the proposed settlement. Plaintiff also requests that the Court schedule a fairness hearing on final settlement approval as the Court's calendar permits.

Respectfully submitted,

Dated: December 5, 2022

/s/ Kevin W. Tucker

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

Lawrence H. Fisher (PA 67667)
**LAWFIRST**
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Tel. (412) 577-4040
lawfirst@lawrencefisher.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 5, 2022, a true and correct copy of the foregoing document was filed and served by way of the Court's CM/ECF system on all counsel of record.


Dated: December 5, 2022                    */s/ Kevin W. Tucker*
                                           Kevin W. Tucker