**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY HAMMOND MURPHY, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:22-cv-00058 |
| v. | |
| LE SPORTSAC, INC., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
TO CERTIFY CLASS FOR SETTLEMENT PURPOSES AND
<u>FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     HISTORY OF THE LITIGATION ..................................................................... 1

III.    OVERVIEW OF THE AGREEMENT ................................................................ 2

        A.      The Settlement Class ............................................................................... 2

        B.      Defendant's General Obligation To Make its Digital Properties Accessible ....... 2

        C.      Defendant's Specific Obligations ........................................................... 3

        D.      The Parties' Ongoing Cooperation ......................................................... 4

        E.      Incentive Award And Attorneys' Fees ................................................... 4

IV.     LEGAL STANDARD ......................................................................................... 5

V.      ARGUMENT ...................................................................................................... 5

        A.      The Court Should Certify The Class For Settlement Purposes ............... 5

        B.      The Agreement Is Fair, Reasonable, And Adequate ............................... 8

                1.      The *Girsh* Factors Favor Final Approval ................................... 10

                        (i)     Complexity, Expense, And Likely Duration Of Litigation ......... 10

                        (ii)    Reaction Of The Settlement Class To The Settlement ............... 11

                        (iii)   Stage Of Proceedings And Discovery Completed ..................... 11

                        (iv)    Risks Of Establishing Liability And Damages .......................... 12

                        (v)     Risks Of Maintaining Class Action Through Trial .................... 12

                        (vi)    Ability Of Defendant To Withstand Greater Judgment ............. 12

                        (vii)   Range Of Reasonableness Of Settlement In Light Of Best
                                Possible Recovery And All Attendant Risks Of Litigation ........ 13

                2.      The *Prudential* Factors Favor Final Approval ........................... 13

        C.      The Notice And Notice Plan Satisfied Rule 23(e) And Due Process
                Requirements ...................................................................................... 14

VI.     CONCLUSION .................................................................................................. 16

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................ 9

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) ........................................................ 6

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ............................................................. 6, 7, 8

*City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*,
    867 F.3d 434 (3d Cir. 2017) ............................................................... 6

*Cureton v. NCAA*, No. 97-cv-00131,
    1999 U.S. Dist. LEXIS 9706 (E.D. Pa. July 1, 1999) ......................... 6

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................................. 10

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ........................................................ 10, 15

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
    226 F.R.D. 498 (E.D. Pa. 2005) ....................................................... 15

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ...................................................... *passim*

*In re NFL Players' Concussion Injury Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ................................................. 5

*In re Pet Food Prods. Liability Litig.*,
    629 F.3d 333 (3d Cir. 2010) ............................................................. 10

*In re Processed Egg Prods. Antitrust Litig.*,
    302 F.R.D. 339 (E.D. Pa. 2014) ....................................................... 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ........................................... 9, 10, 14, 15

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................... 5

*Kaplan v. Chertoff*, No. 06-cv-05304,
    2008 U.S. Dist. LEXIS 5082 (E.D. Pa. Jan. 24, 2008) ................................................ 14, 15

*Kyriazi v. W. Elec. Co.*,
    647 F.2d 388 (3d Cir. 1981) ..................................................................................... 14

*Mulder v. PCS Health Sys., Inc.*,
    216 F.R.D. 307 (D.N.J. 2003) ................................................................................ 14, 15

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ......................................................................................... 7

*Walsh v. Great Atl. & Pac. Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) ................................................................................. 8, 14

## **Rules**

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 8

Fed. R. Civ. P. 23(c)(2) ........................................................................................ 14

Fed. R. Civ. P. 23(e) ...................................................................................... 5, 9, 14

## **Other Authorities**

Fed. R. Civ. P. 23(e) advisory committee note (2018) ...................................................... 9

Manual for Complex Litigation (Fourth) § 21.61 (2004) ............................................... 5

Matthew W. Brault, *Americans With Disabilities: 2010*, U.S. Census Bureau (July 2012),
    https://www2.census.gov/library/publications/2012/demo/p70-131.pdf ..................................... 6

William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022) ............................. 14

## I.    INTRODUCTION

Plaintiff Anthony Hammond Murphy submits this Memorandum in Support of his Unopposed Motion to Certify the Class for Settlement Purposes and for Final Approval of the Class Action Settlement. The Agreement[1] resolves this case against Defendant Le Sportsac, Inc. It is fair and reasonable, and provides substantial benefits to the class, while avoiding the delay, risk, and cost of continued litigation. It is also on par with agreements that courts in this District finally approved in *Murphy v. Eyebobs, LLC*, No. 1:21-cv-00017, Doc. 49 (W.D. Pa. Feb. 9, 2022) ("*Eyebobs*"), *Murphy v. Charles Tyrwhitt, Inc.*, No. 1:20-cv-00056, Doc. 47 (W.D. Pa. Feb. 16, 2022) ("*Charles Tyrwhitt*"), *Murphy v. The Hundreds is Huge, Inc.*, No. 1:21-cv-00204, Doc. 41 (W.D. Pa. Nov. 17, 2022) ("*The Hundreds*"), and *Douglass v. Optavia LLC*, No. 2:22-cv-00594, Doc. 38, p. 3, ¶ 7 (W.D. Pa. Jan. 23, 2023) ("*Optavia*"), and preliminarily approved in *Douglass v. P.C. Richard & Son, LLC*, No. 2:22-cv-00399, Doc. 46 (W.D. Pa. Mar. 16, 2023) ("*P.C. Richard*"), *Douglass v. Mondelez Global LLC*, No. 2:22-cv-00875, Doc. 16 (W.D. Pa. Apr. 13, 2023) ("*Mondelez*"), and that the District of Massachusetts finally approved in *Giannaros v. Poly-Wood, LLC*, No. 1:21-cv-10351, Doc. 45 (D. Mass. Oct. 27, 2022) ("*Poly-Wood*"). In addition, the Long-Form Notice previously approved by the Court provided an adequate opportunity for the class to review and comment on the Agreement. Plaintiff now requests that the Court grant class certification and final approval of the Agreement.

## II.    HISTORY OF THE LITIGATION

On February 16, 2022, Plaintiff filed a complaint for declaratory and injunctive relief against Defendant, alleging Defendant does not have, and has never had, adequate corporate

---

[1] Unless otherwise defined herein, capitalized terms have the meaning set forth in the Agreement, which is available at Doc. 36-1.

policies and practices reasonably calculated to cause its online store—located at https://www.lesportsac.com/ ("Website")—to be fully accessible to blind individuals, in violation of Title III of the Americans with Disabilities Acts, 42 U.S.C. §§ 12181 *et seq.*, and its implementing regulations ("ADA"). (Doc. 1.) On September 20, 2022, Plaintiff filed an amended class action complaint ("ACAC"). (Doc. 27.)

On December 5, 2022, Plaintiff filed a motion to certify the class for settlement purposes, and for preliminary approval of the class action settlement agreement. (Docs. 36, 37.) The Court held a hearing on Plaintiff's motion on January 19, 2023, and the Court granted Plaintiff's motion on January 24, 2023. (Docs. 42, 44-45.)

## III.    OVERVIEW OF THE AGREEMENT

### A.    The Settlement Class

The Agreement applies to the following Settlement Class:

> [A]ll Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States.

(Doc. 36-1, § 2.35.)

### B.    Defendant's General Obligation To Make its Digital Properties Accessible

The Agreement requires that Defendant make the U.S. portion of its Website, https://www.lesportsac.com/, Accessible within three (3) years. (Doc. 36-1, §§ 2.9, 4.1.) The Agreement also applies to digital spaces that Defendant may develop or acquire in the future, ensuring the U.S. portion of them is also fully and equally Accessible. (*Id.*, §§ 4.2, 4.3.)

To be Accessible, Defendant must ensure the Website "provides effective communication to all users, generally, in accordance with the success criteria of the WCAG 2.1." (Doc. 36-1, § 2.6.) "WCAG 2.1" means "Web Content Accessibility Guidelines 2.1, including the WAI-ARIA,"

(*id.*, § 2.41), which experts have testified are "the international system of coding standards used to ensure that websites are accessible." *Meyer v. Walthall*, No. 1:19-cv-03311, 2021 U.S. Dist. LEXIS 70875, at *25 (S.D. Ind. Mar. 25, 2021) (internal citation omitted).

### C.    Defendant's Specific Obligations

In Class Counsel's experience, many agreements to resolve digital accessibility claims fail to outline specific practice changes. Instead, those agreements require that a public accommodation comply with the law by making its website or mobile application accessible by an agreed upon date. Unfortunately, businesses often breach those agreements because, in Class Counsel's view, the businesses fail to take concrete steps to accomplish their goal of offering a digital marketplace in which all consumers may participate. As a result, the businesses receive subsequent claims from other blind consumers who still cannot access the businesses' online stores. It's a lose-lose for everyone.

To avoid that outcome, the Agreement requires that Defendant makes specific policy and practice changes that are designed to ensure Defendant's Digital Properties become—and remain—Accessible to the Settlement Class. For example, Defendant must designate an Accessibility Coordinator, (Doc. 36-1, § 7.1), and appoint or retain an Accessibility Consultant, (*id.*, § 8.1), which personnel will be directly responsible for overseeing Defendant's compliance.

This personnel will help ensure Defendant develops and implements an Accessibility Strategy, (Doc. 36-1, § 10.1), that requires, among other things, that Defendant:

- provides regular Accessibility training to ensure its in-house developers design, develop, and maintain the Digital Properties to become and remain Accessible; (*Id.*, § 12);

- includes Accessibility as a criterion when it obtains content from third-party developers and installs that content on the Digital Properties; (*Id.*, § 6.1.);

3

- provides support during regular business hours to help Blind or Visually Disabled individuals resolve accessibility issues encountered while using the Digital Properties; (*Id.*, § 14);

- performs automated accessibility audits and end-user accessibility testing to evaluate whether the Digital Properties are Accessible; (*Id.*, §§ 16, 17); and

- remediates any bugs that create Accessibility barriers to the Digital Properties with the same level of priority (*e.g.*, speed, resources used to remedy) as any other equivalent loss of function for individuals without disabilities. (*Id.*, § 15.2.)

These detailed steps, and others outlined in the Agreement and Plaintiff's prior filings, (*see* Doc. 37, pp. 2-8), leave little to Defendant's discretion. They represent a concrete plan for remediating the Website and ensuring Defendant's future Digital Properties are Accessible.

### D.    The Parties' Ongoing Cooperation

The Agreement outlines a dispute resolution procedure for resolving disputes between Settlement Class Members and Defendant. (Doc. 36-1, § 24.) To aid Class Counsel in this regard, the Agreement requires Defendant to report the following information, and more, to Class Counsel during the Agreement Term:

- an Annual Report that outlines the status of Defendant's implementation of the Agreement and identifies any outstanding issues on which the Parties disagree; (*Id.*, §§ 2.11, 23.1);

- a Letter of Accessibility that identifies whether Defendant's Website is Accessible, and outlines the testing standards Defendant employed, the accessibility issues testing identified, and Defendant's plan for remediating them; (*Id.*, §§ 2.23, 8.2, 20); and

- a Status Report from Defendant's Accessibility Consultant that identifies inaccessible content on the Digital Properties and the steps Defendant must take to ensure their remediation. (*Id.*, §§ 2.37, 8.3.)

### E.    Incentive Award and Attorneys' Fees

The Agreement provides that Defendant will pay Plaintiff an incentive award of One Thousand Dollars and Zero Cents ($1,000.00), subject to the Court's approval. (Doc. 36-1, § 22.1.) The Agreement obliges Defendant not to oppose Plaintiff's motion for attorneys' fees in an amount

of (a) Forty-Five Thousand Dollars and Zero Cents ($45,000.00) for compensable work through the Agreement Term. (*Id.*, § 25.) The Agreement mandates the payments be split into three payments of Fifteen Thousand Dollars ($15,000), with the first payment being due within six (6) months following the Effective Date of the Agreement, and the remaining two payments being due in six (6) month intervals thereafter. (*Id.*) Plaintiff's forthcoming fee petition will provide an overview of Plaintiff's fees expended and costs incurred in the litigation of this action.

## IV.    LEGAL STANDARD

"The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval," which can be granted "only on finding that [the proposed settlement] is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e). "In cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, . . . district courts [must] be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 715 (E.D. Pa. 2014) (quoting *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 534 (3d Cir. 2004)). "Judicial review must be exacting and thorough . . . because the adversariness of litigation is often lost after the agreement to settle." *Id*. at 714-15 (quoting Manual for Complex Litigation (Fourth) § 21.61 (2004)).

## V.    ARGUMENT

To approve a class settlement, a court must find that: (a) the class should be certified for settlement purposes; (b) the settlement is fair, reasonable, and adequate; and (c) the notice and notice plan met due process requirements. For the reasons stated below, all these requirements are met. The Court should grant Plaintiff's request for certification and final approval.

### A.    The Court Should Certify The Class For Settlement Purposes

Before the Court may determine whether the Agreement is fair, it must certify the class for

final approval. To obtain class certification, Plaintiff "must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy." *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 438 (3d Cir. 2017). Plaintiff must also satisfy one of the elements of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(2).

First, the Settlement Class is sufficiently large that joinder is impracticable, meeting Rule 23's numerosity requirement. *See Cureton v. NCAA*, No. 97-cv-00131, 1999 U.S. Dist. LEXIS 9706, at *15 (E.D. Pa. July 1, 1999). At any given time, any number of the 8.1 million residents in the United States who have difficulty seeing may seek access to Defendant's Website.[2] Joinder would be impracticable for this population, which is dispersed across the country. Given the number of visually disabled internet users who may access Defendant's online store, the numerosity requirement is met. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (extrapolating from evidence of existence of over 175,000 wheelchair users and over 700,000 semi-ambulatory persons in California that the number of persons affected by public accommodation violations at defendant's 70 theatres was in the thousands).

Second, there are common questions of law and fact, thus meeting the commonality requirement. The gravamen of this lawsuit is that Defendant failed to effectively communicate information about the web-based products and services to consumers who are blind, allegedly in violation of Title III. This is a common contention for each Settlement Class Member, and it can be satisfied using evidence common to the Settlement Class. *See Baby Neal v. Casey*, 43 F.3d 48,

---

[2] U.S. Census data from 2010 shows that "[a]bout 8.1 million people (3.3 percent [of the adult population aged 15 and older]) had difficulty seeing, including 2.0 million people who were blind or unable to see." Matthew W. Brault, U.S. Department of Commerce, Economics and Statistics Administration, *Americans With Disabilities: 2010* (July 2012), 6, available at https://www2.census.gov/library/publications/2012/demo/p70-131.pdf (last visited Oct. 11, 2021).

60-62 (3d Cir. 1994) (finding common factual and legal issues under relevant standard).

Third, typicality is satisfied as well. Plaintiff's and the Settlement Class Members' claims are typical since both sets of claims arise from the same practices and are based on the same legal theories: that Defendant failed to make its online store accessible to people with visual disabilities. *Id.*; *see also Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001). Because the claims in this case are "framed as a violative practice" and seek to remedy injuries linked to this practice, they "occupy the same position of centrality for all class members." *Baby Neal*, 43 F.3d at 63. The typicality requirement is met.

Fourth, the requirement for fair and adequate representation is satisfied. Plaintiff has participated in this litigation, and if appointed as a representative of the Settlement Class, he will continue to protect its interests. The Settlement Class also is fairly and adequately represented by competent counsel with experience litigating class actions, generally, and digital accessibility claims, specifically. Courts have found attorneys Tucker, Fisher, Abramowicz, Steiger, and Moore adequately represented similar classes in *Eyebobs* (*see* Doc. 49 at p. 3 (Tucker, Fisher, and Abramowicz)), *Charles Tyrwhitt* (*see* Doc. 47 at p. 3 (same)), *Poly-Wood* (*see* Doc. 45, ¶ 4 (Tucker and Abramowicz)), *The Hundreds* (Doc. 41, p. 3, ¶ 8 (Tucker, Fisher, Abramowicz, Steiger, and Moore)), and *Optavia* (Doc. 38, p. 3, ¶ 8 (Tucker, Abramowicz, Steiger, and Moore )), *P.C. Richard* (Doc. 46, p. 2, ¶ 5 (same)), and *Mondelez* (Doc. 16, p. 2, ¶ 5 (same)). Courts have also found East End Trial Group to have adequately represented the classes in *Butela v. Midland Credit Mgmt.*, 341 F.R.D. 581, 598 (W.D. Pa. 2022) (Stickman, J.), *Haston v. Phillips & Cohen Associates, Ltd.*, No. 2:20-cv-01069, Doc. 58 at ¶ 12(d) (W.D. Pa. May 17, 2022) (Stickman, J.), and *Howard v. LVNV Funding, LLC*, No. 3:19-cv-00093, 2023 U.S. Dist. LEXIS 52294, at *18-21 (W.D. Pa. Mar. 22, 2023) (Gibson, J.).

Plaintiff also satisfies the requirements of Rule 23(b)(2). A class may be certified under Rule 23(b)(2) if the prerequisites of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Because the relief sought in a Rule 23(b)(2) class action is "cohesive in nature," a named plaintiff "can, as a matter of due process, bind all absent class members by a judgment." *Walsh v. Great Atl. & Pac. Tea Co*., 726 F.2d 956, 963 (3d Cir. 1983). Rule 23(b)(2) class actions "frequently [serve] as the vehicle for civil rights actions and other institutional reform cases[.]" *Baby Neal*, 43 F.3d at 58-59. Such is the case here.

Plaintiff advanced a common contention in this litigation: that Defendant failed to provide equal, effective, and timely access to its online content for people who are blind or who have a visual disability. Put differently, Plaintiff alleges that Defendant, by failing to provide digital content that can be perceived, operated, and understood by screen reader auxiliary aids, acted or refused to act on grounds generally applicable to the class. Accordingly, the Settlement Class should be certified pursuant to Rule 23(b)(2).

For the reasons explained above, courts have found Rule 23(a) requirements satisfied and have certified almost identical classes under Rule 23(b)(2) in *Eyebobs* (*see* Doc. 49, ¶¶ 3(iv), 6, 8), *Charles Tyrwhitt* (*see* Doc. 47, ¶¶ 3(iv), 6, 8), *The Hundreds* (*see* Doc. 41, ¶¶ 3(iv), 6, 8), *Optavia* (*see* Doc. 38, ¶¶ 3(iv), 6, 8), *P.C. Richard* (Doc. 46, ¶ 3), *Mondelez* (Doc. 16, ¶ 3), and *Poly-Wood* (*see* Doc. 45, ¶¶ 2, 4, 6(iv)). The Court should certify the Settlement Class for final approval.

## B.  The Agreement Is Fair, Reasonable, And Adequate

Under Rule 23(e), a class action can be settled only with court approval based on a finding that the settlement is "fair, reasonable, and adequate[.]" The fairness inquiry "protects unnamed

class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *In re NFL Players Concussion Injury Litig*., 821 F.3d 410, 436 (3d Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *see also id.* ("[District courts bear] the important responsibility of protecting absent class members, 'which is executed by . . . assuring that the settlement represents adequate compensation for the release of the class claims.'"). "In cases of settlement classes, where district courts are certifying a class and approving a settlement in tandem, they should be 'even more scrupulous than usual when examining the fairness of the proposed settlement.'" *Id*. Still, "whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) ("*Prudential*").

Federal Rule of Civil Procedure 23(e)(2), as amended (effective December 2018), identifies four factors considered in making this fairness determination: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). "The goal of [the] amendment is not to displace any [existing] factor, but rather to focus the court … on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note (2018). These factors overlap with the factors that courts in this Circuit have typically used for purposes of reviewing a proposed class action settlement (the "*Girsh* factors"): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount  of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975). The settling parties must prove that "the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

Later, in *Prudential*, the Third Circuit held that, because of "a sea-change in the nature of class actions," it might be useful to expand the *Girsh* factors to include:

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d at 323. "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). Rule 23(e)(2), as well as the *Girsh* and *Prudential* factors, favor final approval of the Agreement.

        1.       **The *Girsh* Factors Favor Final Approval**

        (i)       **Complexity, Expense, And Likely Duration Of Litigation**

"The first factor captures the probable costs, in both time and money, of continued litigation." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 437. A roadmap exists for what continued litigation might look like. A Rule 26(f) Report filed in another digital accessibility case

identified the defendant's intention to conduct discovery into the plaintiff's disability, his interest in and motivation for accessing the defendant's online store, his prior attempts to access the same, and his intention to return to the same in the future, as well as the plaintiff's intention to conduct discovery into the defendant's policies and practices, generally. *Murphy v. Mast Gen. Store, Inc.*, No. 1:20-cv-00079, Doc. 14 (W.D. Pa. June 22, 2020). The parties anticipated document requests, interrogatories, requests for admission, depositions, expert reports, and cross-motions for summary judgment. *Id*. None of this would yield a better result than the result Plaintiff has obtained in the Agreement. There is no additional relief Plaintiff might obtain that justifies the added complexity, expense, and duration of continued litigation. Plaintiff left nothing on the table.

### (ii)      Reaction Of The Settlement Class To The Settlement

"The second *Girsh* factor attempts to gauge whether members of the class support the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 438. As previously explained, the relief included in the Agreement is at least on par with every settlement resolving digital accessibility claims of which Class Counsel have knowledge, including those finally approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, and *Poly-Wood*, and preliminarily approved in *P.C. Richard* and *Mondelez*. As a result, it is unsurprising that the Agreement drew no objectors or intervenors challenging its terms. The second *Girsh* factor supports final approval.

### (iii)      Stage Of Proceedings And Discovery Completed

"The third *Girsh* factor captures the degree of case development that class counsel accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 438-39. Class Counsel have prosecuted similar digital accessibility claims since 2016. Plaintiff has filed such claims since 2019. Plaintiff and Class Counsel visited Defendant's online store and developed firsthand knowledge of the access barriers that exist. From

that knowledge, and their experience prosecuting similar claims, Plaintiff and Class Counsel appreciated the merits of the case and the available relief. Because the Agreement achieves the very relief Plaintiff would request in summary judgment or trial, the Court should not draw a negative inference from the parties' resolution at an early stage without formal discovery.

### (iv)    Risks Of Establishing Liability And Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 439. These factors weight in favor of settlement because Plaintiff cannot reasonably anticipate achieving more complete injunctive relief at trial than the parties have agreed to in the Agreement. In addition, Defendant might successfully raise various affirmative defenses in dispositive motions or at trial, including that it has no obligations under the ADA to make its online store accessible to blind shoppers or that any further modifications to its online store would impose an undue burden or fundamentally alter its business. Considering the Agreement's relief and Defendant's defenses, these factors weigh in favor of settlement.

### (v)    Risks Of Maintaining Class Action Through Trial

The sixth *Girsh* factor is essentially "toothless" in a settlement class since "a district court need not inquire whether the case, if tried, would present intractable management problems[,] . . . for the proposal is that there be no trial." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. In any event, this factor weighs in favor of settlement still because Plaintiff has no adverse interests to those of the Settlement Class, and is unlikely to develop any such interests, like regaining his sight such that he no longer requires Defendant's online store to be Accessible.

### (vi)    Ability Of Defendant To Withstand Greater Judgment

"The seventh *Girsh* factor is most relevant when the defendant's professed inability to pay

is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig*., 821 F.3d at 440. This factor is less relevant here, as Plaintiff seeks only injunctive relief. Either way, the Agreement cuts no corners in outlining Defendant's future policies and practices. It obligates Defendant to make the U.S. portions of its Digital Properties Accessible, designate an internal Accessibility Coordination Team, retain an outside Accessibility Consultant, administer accessibility training, refresher training, and annual training, conduct both automated and end-user testing, and more. No greater judgment is necessary (or reasonably available).

### (vii) Range Of Reasonableness Of Settlement In Light Of Best Possible Recovery And All Attendant Risks Of Litigation

"In evaluating the eighth and ninth *Girsh* factors, [courts] ask whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id*. The Agreement represents good value for any case. If Plaintiff were successful at summary judgment or trial, he would be entitled to only the injunctive relief the Court deemed appropriate. To this end, Plaintiff would direct the Court to the relief achieved by the DOJ and NFB in analogous cases they prosecuted, *see* Section (V)(B)(1)(iv), *supra*, and to the settlements that courts finally approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, and *Poly-Wood,* and preliminarily approved in *P.C. Richard* and *Mondelez*— the same ones that the Agreement tracks. Because little or no difference exists between the Agreement and the best possible recovery, the eighth and ninth Girsh factors weigh in favor of final approval.

### 2. The *Prudential* Factors Favor Final Approval

While many of the *Prudential* factors are irrelevant to actions seeking injunctive relief,

those that are applicable weigh in favor of final approval. The third *Prudential* factor compares the "results achieved by the settlement for individual class . . . members and the results achieved— or likely to be achieved—for other claimants[.]" *Prudential*, 148 F.3d at 323. As explained earlier, no other claimant is likely to achieve any better injunctive relief than the Agreement provides. The fifth *Prudential* factor considers "whether any provisions for attorneys' fees are reasonable[.]" *Id*. Defendant has agreed to pay Plaintiff's attorneys' fees and costs incurred in connection with this action in the amount of $45,000.00. (Doc. 36-1, § 25.) Plaintiff's fee petition offers an overview of Plaintiff's fees and costs. Because the fee petition remains subject to the Court's review and modification or approval, this factor does not weigh against settlement.

## C. The Notice And Notice Plan Satisfied Rule 23(e) And Due Process Requirements

"The court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e). Unlike those under Rule 23(b)(3), class actions certified under Rule 23(b)(2) contain "no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements." William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022); Fed. R. Civ. P. 23(c)(2). In cases certified under Rule 23(b)(2), "the stringent requirement of Rule 23(c)(2) that members of the class receive the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts,' is inapplicable." *Kaplan v. Chertoff*, No. 06-cv-05304, 2008 U.S. Dist. LEXIS 5082, at *38-39 (E.D. Pa. Jan. 24, 2008) (quoting *Walsh*, 726 F.2d at 962). "Rule 23(e) makes some form of post-settlement notice mandatory, although the form of notice is discretionary because Rule[23](b)(2) classes are cohesive in nature." *Id*. at *39 (alterations omitted) (quoting *Walsh*, 726 F.2d at 962-63); *see also Kyriazi v. W. Elec. Co*., 647 F.2d 388, 393 (3d Cir. 1981) (same); *Mulder v. PCS Health Sys., Inc*.,

216 F.R.D. 307, 318 (D.N.J. 2003) (same).

Courts in the Third Circuit have found notice to be adequate where it is "well-calculated to reach representative class members," and describes the litigation, defines the class, explains the settlement's general terms, provides information on the fairness hearing, describes how class members can file objections, states where complete information can be located, and provides contact information. *Kaplan*, 2008 U.S. Dist. LEXIS 5082, at *36-37, *41 (citing *Prudential*, 148 F.3d at 327 n.86); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180; *In re Processed Egg Prods. Antitrust Litig.*, 302 F.R.D. 339, 354 (E.D. Pa. 2014); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 226 F.R.D. 498, 517-18 (E.D. Pa. 2005).

Here, the parties implemented a form of notice and methods to disperse the notice that were specifically targeted to members of the visually disabled community and that satisfied Rule 23. The Long Form-Notice described the litigation, defined the Settlement Class, explained the Agreement's general terms, provided information on the fairness hearing, described the process and timeframe for filing objections, stated where complete information is located, and provided contact information so Settlement Class Members could contact Class Counsel with questions. (Doc. 36-1, Ex. 1). The Notice Plan, (Doc. 36-2), was sufficiently calculated to ensure the Settlement Class Members were notified. Notably, no Class Member has claimed the notice plan or Notice were deficient, nor were any objections filed by the April 24, 2023 objection deadline, which has now passed.

The Notice Plan executed in this case is comparable to those finally approved in *Eyebobs* (*see* Doc. 49 at Ex. A, § 27), *Charles Tyrwhitt* (*see* Doc. 47-1, § 25), *The Hundreds* (*see* Doc. 41, Ex. A, § 28), *Optavia* (Docs. 12-1, § 27; 38), and *Poly-Wood* (*see* Doc. 45 at Ex. A, § 24), and preliminarily approved in *P.C. Richard* (*see* Doc. 31-1, § 28) and *Mondelez* (*see* Docs. 12-1, § 25;

16).

For the reasons set forth above, the content and distribution of the judicially approved Long-Form Notice and notice plan fairly, accurately, and reasonably informed the class of the Agreement and, therefore, satisfied all applicable requirements of Rule 23(e) and due process.

## VI.    CONCLUSION

For all of the aforementioned reasons, Plaintiff respectfully requests that the Court grant class certification and final approval of the Agreement as more fully stated in the proposed order.

Dated: May 15, 2023

*/s/ Stephanie Moore*

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

Lawrence H. Fisher (PA 67667)
**LAWFIRST**
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Tel. (412) 577-4040
lawfirst@lawrencefisher.com

*Counsel for Plaintiff and Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 15, 2023, a true and correct copy of the foregoing document was filed and served by way of the Court's CM/ECF system on all counsel of record.

Respectfully submitted,

Dated: May 15, 2023

*/s/ Stephanie Moore*
Stephanie Moore